UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KEITH ALAN KINARD, | ] |
| Plaintiff, | ] |
| vs. | ] 2:12-CV-00014-LSC |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The plaintiff, Keith Alan Kinard, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Kinard timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Kinard was forty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 45–46.) His past work experiences include employment as a maintenance and industrial

electrician, a pipeline technician, and an industrial cleaner. (Tr. at 69.) Mr. Kinard claims that he became disabled on June 1, 2008, due to chronic right foot/ankle pain status post severe burns and skin grafts and muscle flap; right hallux valgus; status post amputation of second, third, and fourth toes on the right foot; chronic lower back pain with mild dysfunction; right knee pain, likely osteoarthritis; left shoulder pain; and cervical pain. (Tr. at 26-27, 94.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Kinard meets the insured status requirements of the Social Security Act through March 31,

2011. (Tr. at 26.) She further determined that Mr. Kinard has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's chronic right foot/ankle pain status post severe burns and skin grafts and muscle flap; right hallux valgus; status post amputation of second, third, and fourth toes on the right foot; chronic lower back pain with mild dysfunction; right knee pain, likely osteoarthritis; left shoulder pain; and cervical pain are considered "severe" based on the requirements set forth in the regulations. (*Id.* at 27.) However, she found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) The ALJ did not find Mr. Kinard's allegations to be totally credible, and she determined that he has the following residual functional capacity:

> [L]ight work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can stand/walk only two hours in an eight-hour workday; can sit six to eight hours in an eight-hour workday; can lift/carry twenty pounds occasionally and ten pounds frequently; can occasionally climb ramps and stairs; can never climb a ladder, rope, or scaffold; can only occasionally push and pull with his right lower extremity; can occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity; must avoid even moderate exposure to unprotected heights; requires a sit/stand option; and can occasionally reach overhead with his left upper extremity.

(*Id.*)

According to the ALJ, Mr. Kinard is unable to perform any of his past relevant work, he is a "younger individual," as that term is defined by the regulations, and he has at least a high school education and can communicate in English. (*Id.* at 29.) She determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not he has transferable job skills." (*Id.*) The ALJ found that Mr. Kinard has the residual functional capacity to perform a limited range of light work. (*Id.*) Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as wire wrapper operator, machine solderer, and winding machine tender. (*Id.* at 29-30.) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from his amended alleged date of onset of disability of June 1, 2008, through the date of this decision." (*Id.* at 30.)

II.   Standard of Review.

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to

apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Mr. Kinard alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ failed to properly address or give proper weight to the opinions provided by Dr. Powers, the plaintiff's treating physician. (Doc. 8 at 7.) Second, Plaintiff contends that the ALJ improperly gave greater weight to the opinion of Dr. Sellman, a non-examining state agency medical consultant, over that of Dr. Jimmeh, a one-time consultative examiner. (*Id.* at 10.)

A.  Treating Physician's Opinion

Plaintiff contends that the ALJ did not give proper weight to her treating physician's opinions on an assessment of pain form. (Doc. 8 at 7.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the

claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when: "(1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)(*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The ALJ showed "good cause" for discounting Dr. Powers's opinions in a Clinical Assessment of Pain Form that he completed on February 24, 2010, based on two reasons: (1) Dr. Powers's opinions were inconsistent with his own assessment of Plaintiff's physical capabilities; and (2) Plaintiff's daily activities, including his pain medication regiment, among other evidence, conflicted with Dr. Powers's opinions. (Tr. at 28.)

The record supports the ALJ's conclusion that Dr. Powers's opinions as stated on the evaluation form he filled out conflicted with his assessment of Plaintiff's

physical capabilities. Despite Dr. Powers's opinion that "[p]ain is present to such an extent as to be distracting to adequate performance of daily activities or work," he opined that Plaintiff's treatment will result in no significant degree of fatigue or weakness and that Plaintiff can sit for eight hours per day, stand for two hours per day, and frequently carry ten pounds and occasionally carry twenty pounds without experiencing any increase in fatigue or weakness whatsoever. (Tr. at 282–83, 285.) Additionally, Dr. Powers's assessment that Plaintiff can never balance is inconsistent with his opinion that Plaintiff does not require an assistive device. (Tr. at 269, 282.)

Plaintiff's activities and other evidence additionally support the ALJ's decision to give little weight to Dr. Powers's opinions. Dr. Powers's opinion that physical activity will "[g]reatly increase [Plaintiff's] pain . . . to such a degree as to cause distraction from tasks or total abandonment of tasks" conflicts with Plaintiff's testimony that he takes only Aleve and Ibuprofen for pain and not other medications, such as Celebrex or Soma, despite the effectiveness of those medications for Plaintiff in the past. (Tr. at 58, 275.) Additionally, Plaintiff's testimony that he cannot afford treatment for pain conflicts with his consumption of approximately twelve beers per week and one and a half packs of cigarettes per day, as well as his use of marijuana at least until September 2009. (Tr. at 275.) Furthermore, Dr. Powers's opinion

regarding the level of Plaintiff's pain conflicts with Plaintiff's testimony in a Function Report that he engaged in the following activities in 2009 after the alleged date of the onset of Plaintiff's disability: feeding dogs daily, doing laundry three times a week, washing dishes, and going to the river to "hang[] out." (Tr. at 195-96, 198.) While these activities may alone not be sufficient to find Plaintiff capable of working, the ALJ did not rely solely on Plaintiff's activities in discounting his subjective complaints. Instead, the ALJ properly considered Plaintiff's activities together with other evidence in accordance with the regulations, SSR 96-7p, and Eleventh Circuit case law. *See* 20 C.F.R. § 416.29(c)(3)(I); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). An interview in 2009 provides additional evidence that Plaintiff's pain level is not as alleged, as a Social Security Administration field office employee observed that Plaintiff had no difficulty with hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, vision, using his hands, or writing. (Tr. at 161.)

    Plaintiff also incorrectly asserts that the ALJ had a duty to contact Dr. Powers to verify the basis for his opinion. (Doc. 8 at 10.) Indeed, the ALJ may not "arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional," *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992), and there are situations

wherein an ALJ should request clarification from a physician. However, the ALJ is not required to do so when the record contains sufficient evidence to make an informed decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (*citing Ford v. Secretary of Health & Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B)). The ALJ here neither acted arbitrarily nor substituted her own opinions for those of Dr. Powers. As noted above, the ALJ provided a reasoned explanation for giving little weight to Dr. Powers's opinions on the assessment of pain form and opted to rely instead upon the opinion of Dr. Sellman, a non-examining physician, whose opinion was consistent with medical and other evidence in this case. (Tr. at 28.)

> B.  Opinions of the State Agency Medical Consultant and the Consultative Examiner

Plaintiff also incorrectly asserts that the ALJ gave too much weight to Dr. Sellman's opinions because Dr. Sellman was a non-examining physician. (Doc. 7 at 15.) Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinion: 1) a treating source, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as "a physician, psychologist,

or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.  The regulations and case law indeed set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985).  However, "the weight due to a non-examining physician's opinion depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011).

Substantial evidence supports the ALJ's decision to give greater weight to the opinion of Dr. Sellman, a non-examining physician, than the one-time consultative examiner, Dr. Jimmeh.  Dr. Sellman thoroughly reviewed Plaintiff's medical file and opined that Plaintiff's impairments limit but do not prevent him from performing light work, where he can stand or walk two hours in an eight-hour day and can sit with normal breaks six hours in an eight-hour day. (Tr. at 24, 268.) Dr. Jimmeh examined

Plaintiff on September 29, 2009, and opined that Plaintiff can stand or walk less than four to six hours in an eight-hour day and sit six to eight hours in an eight-hour day with frequent breaks. (Tr. at 252.) The ALJ gave Dr. Jimmeh's opinion great weight insofar as it was consistent with medical and other evidence but gave his specific opinion that Plaintiff requires frequent breaks little weight. (Tr. at 28.) The ALJ found that Plaintiff did not require frequent breaks based on other evidence in the case. (*Id.*) First, Dr. Sellman did not find that Plaintiff requires frequent breaks, and in light of Dr. Powers's assessment that Plaintiff can sit for eight hours in an eight-hour workday, the ALJ resolved the conflict between Dr. Jimmeh's and Dr. Sellman's opinions by finding that Plaintiff requires a sit/stand option while performing light work but does not require frequent breaks. (*Id.*) As the fact-finder, the ALJ was entitled to weigh the evidence and ultimately reject portions of Dr. Jimmeh's report as inconsistent with other evidence of record. *See* 20 C.F.R. § 416.929(c)(4); *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (holding that an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion") (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Further, the opinion of Dr. Jimmeh was not entitled to any deference because, as a one-time examiner, he was not a treating physician. *See* 20 C.F.R. § 404.1527(d)(I);

*Crawford*, 363 F.3d at 1160.

Additionally, Plaintiff's work experience supports the ALJ's decision to give more weight to Dr. Sellman's opinion that Plaintiff would only require normal breaks than to Dr. Jimmeh's opinion that Plaintiff would require frequent breaks. Both work experience and daily activities before and after a plaintiff's alleged date of onset of disability are relevant to determining whether the plaintiff's impairments affect his ability to work. 20 C.F.R. § 416.912(c)(3) & (4). Importantly, Plaintiff has performed work both as a commercial electrical worker and a cleaner since June, 1, 2008, the date of the alleged onset of his disability. (Tr. at 20, 152–53.)[1] Further, Plaintiff reported to Dr. Jimmeh that "he remains independent with [activities of daily living], ambulation, and transfers." (Tr. at 248.) This report is consistent with Dr. Sellman's observation in October of 2009 that Plaintiff was performing light housework, making light meals, and shopping for groceries. (Tr. at 268–69.) Substantial evidence in the record thus supports the ALJ's decision to give greater weight to Dr. Sellman's opinion regarding Plaintiff's ability to perform light work without frequent breaks.

---

[1] The ALJ found that this work did not rise to the level of substantial gainful activity because the amounts Plaintiff earned were below the applicable threshold amount. (Tr. at 26.)

IV.     Conclusion.

Upon review of the administrative record, and considering all of Mr. Kinard's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this <u>7th</u> day of <u>February 2013</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]